## E. H. MURRAY et al. v. GUY C. NELSON et al.

### (Nashville. December Term, 1921.)

1. **PLEADING.** Allegations of binding on pleader.

The allegations of a pleading are binding on the pleader. (*Post*, *pp.* 461-463.)

Cases cited and approved: Central Bank v. Davis, 19 Pick., 373; Lyndon Savings Bank v. International Co., 75 Vt., 224; Farmers' Exchange Bank v. Altura Gold Mill, etc., Co., 129 Cal., 263; Parshley v. Heath, 69 Me., 90; Loveday v. Anderson, 18 Wash., 322; Farmers' Bank v. Ewing, 78 Ky., 264; Johnson v. Parker, 86 Mo. App., 666; Portsmouth Savings Bank v. Wilson, 5 App. D. C., 8.

2. **BILLS AND NOTES.** Subsequent indorsers do not impliedly adopt waiver of notice in prior indorsement.

Under Uniform Negotiable Instruments Act section 110, as to waiver of demand and notice, where words of waiver are used in the body of the instrument, all becoming parties to the instrument are bound by the waiver and not entitled to notice; but, if the waiver is not in the instrument itself, it may be written on the instrument by an indorser, and, if it is, it binds him only, and does not affect other parties who become indorsers either before or after him and who did not themselves waive. (*Post*, *pp.* 463-465.)

3. **BILLS AND NOTES.** Indorsers subsequent to indorsement waiving notice and guaranteeing payment held indorsers only, not guarantors.

Where, upon transfer of negotiable notes by payees, they wrote above their indorsement, "Notice, demand and protest waived and we guarantee the payment of the within note and interest," subsequent indorsers, under Uniform Negotiable Instruments Act, section 63, were indorsers only, and not guarantors. (*Post*, *pp.* 465-467.)

FROM DAVIDSON.

Murray v. Nelson.

Appeal from the Chancery Court of Davidson County.—
HON. JNO. T. LELLYETT, Chancellor.

STOKES & STOKES, for appellants.

PITTS & McCONNICO, for appellees.

MR. JUSTICE McKINNEY delivered the opinion of the
Court.

The only question involved upon this appeal is the lia-
bility of the estate of R. N. Cotton and Mrs. Cora Cotton
on two promissory notes, similar in character and amount,
the only difference being that one was due one year later
than the other; hence we will here set forth only the first
note, and what we say with respect to it likewise applies
to the other.   The first note is as follows:
$2,882.   Nashville, Tenn., August 21, 1914.

"On or before August 21, 1915 after date I promise to
pay to the order of D. J. Jarratt and wife Jennie A. Jar-
ratt two thousand, two hundred, eighty-two & no/100 dol-
lars at the Bank of Nashville, Tenn.   Value received, be-
ing a payment on blocks 1, 2, 3, 4, in Caruther's Sub. this
day purchased of D. J. Jarratt and Jennie A. Jarratt, with
interest from date at six per cent. per annum, and ven-
dor's lien retained to secure the payment of this note and
interest.

"In event this note is placed in the hands of an attorney
for collection I agree to pay all cost and a reasonable at-
torney's fee.

"GUY C. NELSON."

Said note is indorsed on the back as follows: "Notice, demand and protest waived and we guarantee the payment of the within note and interest.

> D. J. JARRATT.
> JENNIE A. JARRATT.
> R. N. COTTON.
> CORA F. COTTON."

No witnesses testified on the hearing, and the record consists of the original bill; the exhibits thereto, which include the notes; the answer of the Cottons, and several decrees.

By agreement the original notes were sent up with the transcript for inspection by the court.

It is conceded that said notes were not presented for payment when due, and consequently notice of dishonor was not given the defendants. So that they cannot be held liable for the payment of said notes unless they have waived demand and notice or have become guarantors.

The chancellor was of the opinion that the defendants were simply indorsers without notice and dismissed the bill.

It appears from the bill, the allegations of which are binding upon the complainants, that these notes were executed by Guy C. Nelson to D. J. Jarratt and wife, Jennie A. Jarratt, on August 21, 1914; that in November, 1914, Cotton and wife conveyed to Jarratt and wife a tract of land in Davidson county, and as a part of the consideration Jarratt and wife transferred to them said two notes, said transfer appearing on the back of the notes in the language hereinabove set forth; that the complainants, E. H. Murray and W. B. Fly, are the owners and lawful holders of said notes.

It is quite evident from the record, and it is so stated in the brief of counsel for the complainants, that the complainants purchased said notes from Cotton and wife, who indorsed their names on the back of said notes at a time subsequent to that at which Jarratt and wife affixed their signatures thereto. The indorsements on the back of said notes waiving demand and notice and guaranteeing their payment were written with a pen by Jarratt and wife, or by some one for them. From an inspection of same it is apparent that they were not written by Cotton and wife, because in a different handwriting from their signatures, and because written in ink of a different color from that used by them in writing their names. The question is, therefore, did Cotton and wife, by writing their names beneath that of Jarratt and wife, adopt the waivers and guarantees to which Jarratt and wife had subscribed?

Mr. Daniel, in his work on Negotiable Instruments (6th Ed., vol. 2, par. 1092a), under the title "Whether Waiver Over One Indorsement Applies to Others," says:

"Sometimes the waiver is not embodied in the instrument itself, but is made by one of the indorsers by writing over his signature, 'I waive demand,' or 'I waive presentment,' or 'waiving demand and notice,' or 'I hold myself accountable without protest or notice,' or some such expression; and in such cases the better opinion is that the waiver is simply the individual waiver of the indorser over whose signature it is written, and not binding upon others who do not make themselves parties to it. For indorsement is a separate and independent contract, embodying, it is true, the terms of the bill or note; but not by implication embodying the terms of any other indorsement, each

indorsement speaking independently of others, and introducing such terms as may be with the nature of the act."

The view thus expressed is supported by the following authorities: *Central Bank* v. *Davis,* 19 Pick. (Mass.), 373; *Lyndon Savings Bank* v. *International Co.,* 75 Vt., 224, 54 Atl., 191; *Farmers' Exchange Bank* v. *Altura Gold Mill, etc., Co.,* 129 Cal., 263, 61 Pac., 1077.

In this latter case, while approving the Massachusetts case, the court made a distinction and held the indorsers liable for the reason that the waiver was not written by either of the indorsers, but was stamped upon the back of the note by the bank in red ink before it left the bank to be indorsed; the court holding, under the circumstances, that it was not the act of any one of the indorsers, but was the act of all who signed their names thereunder.

Upon the other hand, other courts have held that subsequent indorsers will be held to have adopted the waiver unless they place before their names the words, "requiring demand and notice," or something equivalent. *Parshley* v. *Heath,* 69 Me., 90, 31 Am. Rep., 246; *Loveday* v. *Anderson,* 18 Wash., 322, 51 Pac., 463, (the opinion was by a divided court of three to two) ; *Farmers' Bank* v. *Ewing,* 78 Ky., 264, 39 Am. Rep., 231; *Johnson* v. *Parker,* 86 Mo. App., 666; *Portsmouth Savings Bank* v. *Wilson,* 5 App. D. C., 8.

It is not necessary for us to decide which of these rules is correct, for the reason that this question is controlled by our Negotiable Instruments Act, chapter 94 of the Acts of 1899, and we have cited the foregoing cases merely for the light, if any, they may shed upon our statute. In none of the above cases were the courts dealing with section

110 of the Uniform Negotiable Instruments Act, which is as follows:

"Where the waiver is embodied in the instrument itself, it is binding upon all parties; but where it is written above the signature of an indorser, it binds him only."

In view of the conflict of authority upon the question of signing under the indorsement of another, it must be presumed that the section of the act just quoted undertook to decide the matter.

In 8 Corpus Juris, par. 985, the author seems to be of the opinion that, independent of the Negotiable Instruments Act, subsequent indorsers adopt the waiver of prior indorsers, but he then adds:

"The Negotiable Instruments Law, however, seems to change the prior rule to some extent. It provides that where the waiver 'is matter above the signature of an indorser, it binds him only.'"

In construing said section 110, Mr. Dolle, in his book entitled "The Law of Business Papers and Securities," published in 1920, says:

"When words of waiver are employed in the body of the instrument, making this a condition of its negotiation, all persons who become parties to such an instrument are bound by the waiver and none are entitled to notice. If it is not embodied in the instrument itself the waiver may be written upon the instrument by an indorser and if it is, it binds him only. It does not affect the other parties who become such either before or after him and who did not themselves waive."

We are of the opinion that Mr. Dolle has given this provision of the act a proper interpretation, and counsel

for the complainants seems to concede this, for he states in his brief:

"If the indorsement in this case had been simply waiving demand and notice, possibly under the Negotiable Instruments Law it would have applied alone to D. J. Jarratt, the first indorser."

But counsel for complainants insists that, when section 110 of the act is considered in connection with section 63 thereof, it is apparent that the Cottons adopted the indorsement of the Jarratts and became guarantors, and that they are not simply indorsers, waiving demand, protest, and notice. But did they adopt the indorsement which the Jarratts prefixed to their names?

By the express provision of section 110 of the act, the waiver of demand and notice was the act of the Jarratts and not that of the Cottons. The presumption is that the Cottons knew the law, and, at least, knew that the waiver feature of the indorsement was only the act of the Jarratts, and hence by no reason or logic can it be said that the Cottons subscribed to the waiver of demand and notice. If that be true, then it must follow that they did not subscribe to the guaranty of payment, because it will not be presumed that they subscribed to a part of the indorsement and rejected the remainder. They either undertook to subscribe to all or to no part thereof. But we are of the opinion that under the specific terms of the act the Cottons did not become guarantors. Section 63 of the act is as follows:

"A person placing his signature upon an instrument otherwise than as a maker, drawer or acceptor, is deemed to be an indorser, unless he clearly indicates by appro-

145 Tenn.—30

priate words his intention to be bound in some other capacity."

It appears that the Cottons merely signed their names on the back of these notes without prefixing words of any character. The act says that, where they expect to be bound otherwise than as indorsers they must clearly indicate such intention by appropriate words. They could have said, "we guarantee the payment of this note," or, "we adopt the above indorsement," or could have used similar expressions; but they merely signed their names without prefixing any words thereto as required by the act in order to bind them otherwise than as indorsers. The court cannot say that these parties clearly intended to adopt the indorsement of the Jarratts, especially since the statute expressly provides that the waiver feature of the indorsement is the act only of the first signer.

Mr. Dolle, in commenting upon this section of the act, says:

"Every person who places his signature upon an instrument otherwise than as maker, drawer, or an acceptor, is an indorser and he is liable upon the instrument only as such unless he writes at his signature words which show that he intends to assume some other liability and be bound in some other capacity, as, for example, maker, surety or guarantor. Parol evidence is not admissible to show a different intention."

The statute contemplates that the indorser must personally write or have written at his signature words clearly indicating an intention to be bound in some other capacity than that of indorser. In other words, the court cannot speculate about the matter, but can only hold him liable in some other capacity than that of indorser where he

Murray v. Nelson.

uses words clearly and unquestionably indicating such intent. As previously stated, words expressly adopting the indorsement of the Jarratts would have met the requirement of the statute; but this result cannot be arrived at by inference or assumption.

We are therefore of the opinion that the Cottons were simple indorsers and were entitled to notice of dishonor, and, not having received same, they cannot be held liable.

It results that the decree of. the chancellor will be affirmed with costs.