WHIDDEN and COMPANY, Incorporated, *vs.* EBEN D. JORDAN & another, trustees.

Suffolk.    December 13, 1912. — June 16, 1913.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Contract,* In writing.   *Evidence,* Extrinsic affecting writings.

The parties to a contract in writing for the construction of a building, which provided that the final payment should be made only when the architect certified that the work was completed, made a subsequent contract in writing, which recited that a controversy had arisen between the parties as to the amount due upon the contract and provided that the contractor should accept and the owner should pay $35,000 in full settlement of all claims, whereof $25,000 should be paid forthwith and the balance should be paid as provided by the terms of the first contract.  The $25,000 was paid and the contractor brought an action against the owner for the balance of $10,000.  The defendant offered to prove that when the second contract in writing was made a portion of the building had not been completed and "that it was the purpose of the parties to provide that the $10,000 should be paid only when the waterproofing of the sub-basement was completed in accordance with the terms of the contract."  This evidence was excluded by the judge, who ordered a verdict for the plaintiff.  *Held,* that the words of the contract were not plain and that the evidence should have been admitted to show their true meaning as relating to a contract that had not been completed.

CONTRACT to recover $10,000 as a balance alleged to be due upon a contract in writing dated March 6, 1909, to construct for the defendants a building on Avon Street in Boston for the sum of $760,000, in accordance with an alleged promise to pay such balance contained in a further contract in writing between the parties dated February 15, 1911.   Writ dated June 5, 1911.

In the Superior Court the case was tried before *Wait,* J.   The plaintiff introduced in evidence the contract of February 15, 1911, and also the contract of March 6, 1909.

The contract of February 15, 1911, was as follows:

"Agreement between Eben D. Jordan and Edward J. Mitton, Trustees of the Avon Street Trust, and Whidden & Company, Inc.

"Whereas, a controversy has arisen between the parties as to the amount due from the Trustees to Whidden & Company, Inc., for the construction of the addition to the building on Avon Street

and Bedford Street, under a contract dated March 6, 1909, or otherwise; and

"Whereas, Whidden & Company, Inc., has agreed to accept thirty-five thousand dollars in full settlement of all its claims of every kind and description growing out of the construction of said building, and the Trustees have agreed to pay said sum of thirty-five thousand dollars on the following terms and conditions: —

"Twenty-five thousand dollars to be paid forthwith;

"The balance to be paid as provided by the terms of said contract;

"Now, therefore, Whidden & Company, Inc., releases and discharges said Jordan and Mitton, as trustees as aforesaid, from any and all claims it now has or may in the future have against them growing in any way out of the construction of said building, except its aforesaid claim for said balance of ten thousand dollars.

"And the Trustees release and discharge said Whidden & Company, Inc., from any and all claims which they now have or may in the future have against it in any way growing out of the construction of the said building, with the exception of any claim they now have or may in the future have against Whidden & Company, Inc., under the clause in the specifications accompanying said contract entitled "Liability for Accidents." No action shall be brought for the amount of said claim, unless the Trustees have first offered to arbitrate the same under Clause II of said contract and, after reasonable time, arbitration has been refused.

"In witness whereof the Trustees have hereunto set their hands and seals and Whidden & Company, Inc., has caused this instrument to be signed and its corporate seal to be hereto affixed by Renton Whidden, its president, thereto duly authorized, this fifteenth day of February, 1911."

Here followed the signatures and the seals of the parties.

It appeared that the $25,000 mentioned in the contract of February 15, 1911, was paid by the defendants to the plaintiff. The defendants admitted that at the date of the writ no lien or attachment was permitted to be filed or remain on the property of the defendants or any part of the premises for or on account of any labor or materials claimed or other demand against them; that at the date of the writ there was no lien, attachment or incum-

brance caused or suffered by the contractors lawfully existing on the premises; and that the defendants had not been restrained from making any payment by any legal process. The plaintiff then rested.

Thereupon the defendants offered to prove that on February 15, 1911, there was a controversy between the parties as to numerous matters involving the construction of the building and involving the penalties for delay, and that it was asserted by the defendants (and the assertion was understood by the plaintiff) that a portion of the building had never been completed, namely, the waterproofing of the sub-basement, and that it was the purpose of the parties to provide that the $10,000 should be paid only when the waterproofing of the sub-basement was completed in accordance with the terms of the contract.

The judge excluded the evidence offered and ruled that all controversies in relation to the construction of the building existing between the parties on February 15, 1911, were disposed of by that contract and that the plaintiff was entitled to recover on the evidence submitted.

The judge ordered the jury to return a verdict for the plaintiff in the sum of $10,792; and the defendant alleged exceptions.

*C. K. Cobb,* for the defendants.

*E. R. Anderson,* (*G. A. Sweetser* with him,) for the plaintiff.

LORING, J. The contract of March 6, 1909, provided that "Final cash settlement hereunder shall become due and shall be paid on demand after such expiration of time, but only on the conditions, viz.,

"1. That no lien, attachment, or incumbrance caused or suffered by the contractors then lawfully exist in the premises, and

"2. That the owners be then restrained from making such payment by no legal process; and

"3. That at such time the final balance on all accounts then due the contractors from the owners in the premises shall have been found and certified accordingly in writing by the architects and the contractors, or found and determined by the award of the arbitrators as hereinafter provided."

It is the defendants' contention that the payment of the $10,000 specified in the agreement of compromise of February 15, 1911, was made subject to the third clause set forth above as well

as to the first and second clauses by virtue of the provision in the agreement of compromise that "The balance [$10,000, was] to be paid as provided by the terms of said contract." That is to say, the $10,000 was to be paid when the architects certified that the work was "complete and perfect in every respect . . . to the satisfaction of Winslow, Bigelow & Wadsworth, successors to Winslow & Bigelow, of Boston, Architects." If this be the true meaning of that clause, the controversy which was settled by the agreement of compromise was a controversy as to the amount due or to become due, not a controversy as to the amount then due.

It is the plaintiff's contention on the other hand that the controversy which was settled by the agreement of compromise was as to the amount then due and that consequently compliance with the third clause set forth above was dispensed with by the agreement of compromise which fixed the amount then due. That left the first and second clauses as the only provisions of the original contract on which the words in question (namely, "The balance to be paid as provided by the terms of said contract") should operate. In that case the balance was to be paid at the time provided by the contract, not as provided by all the terms of said contract.

A controversy as to the amount due does not ordinarily arise between a contractor and the owner until the contractor asserts that he has completed his work, and, if a controversy as to the amount due arises when a contractor asserts that he has completed his work, the controversy as to the amount due includes *inter alia* the question whether the work has been completed. For these reasons, in the absence of evidence as to the circumstances under which the contract was made, we are of opinion that the construction given to the agreement in the Superior Court was correct.

But we are also of opinion that the wording of the contract is not plain, and that evidence of the circumstances under which it was made is admissible to ascertain the true meaning of it.

Formerly the rule on which the courts went in admitting or excluding such evidence was Lord Bacon's distinction between a patent and a latent ambiguity. See for example *Putnam* v. *Bond,* 100 Mass. 58. As to Lord Bacon's distinction see Wig-

more, Ev. §§ 2472 *et seq.* But in the later cases, if the wording of the contract is such that the circumstances under which it was made would control the meaning to be given to it, the evidence has been admitted. See for example *Proctor* v. *Hartigan,* 143 Mass. 462; *Macdonald* v. *Dana,* 154 Mass. 152; *Bassett* v. *Rogers,* 162 Mass. 47. The reason why it is not competent to add to, contradict or vary a written agreement is because where a trade between two parties is struck by their entering into an agreement in writing the trade struck is that stated in the written agreement. *Butterick Publishing Co.* v. *Fisher,* 203 Mass. 122. If the terms of the trade which are in writing are plain, they cannot be added to, contradicted or varied by parol. But if they are not plain, the true meaning of them can be ascertained by evidence of the circumstances under which the written contract was made.

In the case at bar the defendant offered to prove "that it was the purpose of the parties to provide that the $10,000 should be paid only when the waterproofing of the sub-basement was completed in accordance with the terms of the contract." That was in effect an offer to prove that at the date of the contract there was no controversy as to the fact that the contract had not been completed by reason of the failure to finish the waterproofing of the sub-basement. If there was in fact no controversy in respect to the contract not having been completed, this agreement could not be construed to be a settlement of a controversy as to that matter and the construction contended for by the defendants must be adopted.

*Exceptions sustained.*